*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2017-013

MARCH TERM, 2017

| | |
|---|---|
| In re K.G., Juvenile | APPEALED FROM: |
| | Superior Court, Rutland Unit, Family Division |
| | DOCKET NO. 90-6-14 Rdjv |
| | Trial Judge: Nancy Corsones |

In the above-entitled cause, the Clerk will enter:

Mother appeals the superior court's order terminating her parental rights with respect to her son, K.G. We affirm.

K.G. was born on July 29, 2013, at which time the father and mother were living together. The father drank heavily and was verbally and physically abusive towards mother. Mother had been diagnosed with several serious mental health conditions when she herself was in the custody of the Department for Families and Children (DCF) during four of her teenage years. On June 25, 2014, when K.G. was eleven months old, he was placed in DCF custody after it was discovered that mother had left him unattended in their home. At that point, the father was no longer living in the home, and mother later obtained a restraining order against him.

On June 26, 2014, DCF filed a petition to have K.G. adjudicated a child in need of care or supervision (CHINS). After a two-week emergency placement, K.G. was placed with the foster family with whom he has lived ever since. At the time K.G. came into DCF custody, he was not yet crawling or eating solid foods. His foster mother observed that he sometimes stared blankly into space, and he did not respond to smiles or verbal cues. Later testing showed that he was developmentally delayed with respect to speech and motor skills, thus requiring work with a speech therapist and an occupational therapist.

K.G. was adjudicated CHINS, by stipulation, on July 17, 2014. At a September 4, 2014 disposition hearing, the superior court continued DCF custody and adopted a case plan with concurrent goals of reunification and adoption. The disposition plan called for mother, among other things, to engage in psychological treatment, attend a parenting class, attend all visits with K.G., and not engage in a relationship in which there is domestic violence.

To assist with case planning and to assess risk factors, DCF had mother participate in a psychological evaluation, which was conducted over the course of a week in October 2014. The evaluator diagnosed mother with a generalized anxiety disorder containing elements of social anxiety and obsessive compulsive behavior, with a vulnerability to episodes of depression and a susceptibility to seek solace and dependency in dysfunctional relationships. The evaluator had little concern about mother acting aggressively towards K.G and expressed optimism about

mother's prospects for reunification. He expressed concerns, however, given K.G.'s special needs, about mother's inability to form healthy and trusting adult relationships and to read and respond to K.G.'s cues.

Mother did not participate in psychotherapy to any meaningful extent until March 2016, nearly two years after K.G. was placed in DCF custody. Mother's supervised visits with K.G. were inconsistent the first year, due at least in part to the fact that she moved from Rutland, where K.G. lived with his foster family, to Windsor to live with her mother. Her visits became more consistent through the summer and fall of 2015 after she moved back to Rutland, but she failed to inform her DCF caseworker where or with whom she was living. As DCF discovered later, she was living with a man who was charged in November 2015 with sexual exploitation and luring a child. By early 2016, mother's attendance at the visits were declining again, and she was not engaging in the coaching process. In August 2016, the evaluator who had done the October 2014 psychological evaluation of mother did a second evaluation in which he was far more pessimistic about mother's ability to parent K.G.

In February 2016, DCF filed petitions to terminate both the father's and mother's parental rights. A termination hearing proceeded solely with respect to mother because the father's positive result from genetic testing was not received soon enough to hold a paternity hearing before the termination hearing. The termination hearing was held over three days in late October 2016. Following the hearing, the superior court granted DCF's petition, concluding that mother's ability to parent K.G. had stagnated, and that termination of mother's parental rights was in his best interests. Noting that K.G. had been with the same foster family for two and one-half years, almost seventy-five percent of his life, and had made significant progress during that time, the court concluded that mother would be unable to resume parenting this special needs child within a reasonable period of time from the child's perspective. The court stated that mother's inability to put service recommendations into practice and her dishonesty with DCF regarding her living situation and adult relationships demonstrated her near total lack of understanding of K.G.'s fundamental need for safety and consistency. The court agreed with the opinion of the evaluator that if K.G. were returned to mother without the significant support he now enjoyed in his foster home and from the DCF service team, he would quickly regress and experience severe problematic behaviors that would undermine the progress he had made.

On appeal, mother argues that the superior court erred by: (1) reciting testimony regarding the reasonableness of DCF's reunification efforts without making its own findings on that issue, and (2) faulting mother for allegedly not addressing K.G.'s extreme behaviors. We discern nothing in these arguments to disturb the superior court's termination order.

Regarding the first argument, mother states that the question of the reasonableness of DCF's reunification efforts was acknowledged by the court when it recited testimony in its decision that DCF held visits with K.G. in the same office in which mother had had visits with her mother, which was a negative trigger for mother, and that DCF ignored the suggestions of two therapeutic case managers regarding how to approach parent education with mother. Mother argues that the court failed to make findings on a material issue—whether DCF made reasonable efforts to reunite mother and K.G. See In re C.P., 2012 VT 100, ¶ 38, 193 Vt. 29 (stating that court is "not required to find DCF made reasonable efforts as a prerequisite to termination," but "the level of assistance provided to parents is relevant in determining whether a parent is unlikely to be able to resume parental duties within a reasonable period of time" (quotation omitted)). We find no merit to this argument. The record reveals a substantial number of services provided to mother over a significant period of time, and the reasonableness of DCF's efforts towards reunification

was not seriously contested at the termination hearing.  Within its thorough decision, the superior court noted that mother felt that her visits with K.G. in the office where she had had visits with her own mother triggered her, but nothing in the record indicated that mother sought to have the visits moved to a different forum. In fact, visits occurred during different periods at different places.  The court also noted in its decision the testimony of two of K.G.'s service providers who offered positive views of mother's parenting.  The court noted that, at team meetings, DCF at times ignored recommendations of one of the service providers and mother, and the court acknowledged that the interactions between providers and mother raised some valid criticisms.  But it also considered testimony of four other service providers on interactions with mother and determined that mother would not be able to resume her parental role because of her inability to recognize and respond to K.G.'s needs.  The court was not compelled to speculate as to whether mother would have made sufficient progress if other recommendations had been followed.  This is not a situation where the court failed to make findings of fact on a material issue.

Mother also faults the superior court for expecting her to be able to address K.G.'s unexplained dysregulated behavior.  The court noted that K.G. often showed extreme dysregulation after spending time with mother.  The court acknowledged that the evidence did not provide an explanation for the behavior, but stated that "[i]t is one of the circumstances that mother should have addressed in the two and a half years since [K.G.] came into custody as a result of her neglect."  Mother asks how the court could have expected her to address K.G.'s unexplained behavior.  Read in the context of the court's following statement and its full order, the court's intent becomes clear.  Immediately after the challenged statement, the court stated: "[K.G's] behavior should have been an additional reason for mother to work tirelessly on reunification. That didn't happen."  The court's point was simply that mother needed to get to the point where she could appreciate the gravity of K.G.'s challenges and cooperate with service providers to learn how to better address those challenges, but was unable to do so.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

3